IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TRIMGEN CORPORATION, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-14-2850 |
| IVERSON GENETIC DIAGNOSTICS, INC., | * | |
| | * | |
| Defendant. | | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM OPINION

Plaintiff TrimGen Corporation ("TrimGen" or "Plaintiff") brings this diversity action against Defendant Iverson Genetic Diagnostics, Inc. ("Iverson" or "Defendant"), seeking damages of $1,468,979.98, plus pre-judgment interest, stemming from a contract dispute between the parties. TrimGen alleges that Iverson has defaulted on its contract with TrimGen by failing to pay for goods manufactured and delivered by TrimGen. Currently pending before this Court is Iverson's Motion to Dismiss (ECF No. 5) and TrimGen's Motion for Leave to File a Surreply (ECF No. 12). The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons that follow, Iverson's Motion to Dismiss (ECF No. 5) is DENIED and TrimGen's Motion for Leave to File a Surreply (ECF No. 12) is GRANTED.

BACKGROUND

In a ruling on a motion to dismiss, this Court must accept the factual allegations in the plaintiff's complaint as true and construe those facts in the light most favorable to the plaintiff. *See, e.g.*, *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

Plaintiff TrimGen, a Maryland corporation, manufactures DNA testing kits for "genotyping of drug sensitivity and . . . mutation detection of various cancers." Compl. ¶¶ 1, 5, ECF No. 1. TrimGen's principal place of business is located at 34 Loveton Circle, Sparks, Maryland 21152. *Id.* ¶ 1. Defendant Iverson, a Nevada corporation, provides, among other services, genetic testing for drug sensitivity. *Id.* ¶¶ 2, 6. Iverson's executive offices are located in Seattle, Washington, and it also owns a Clinical Laboratory Improvement Amendment (CLIA)-certified laboratory in South Carolina at which it performs the genetic testing. *Id.* ¶¶ 2, 6.

Iverson allegedly contacted TrimGen in Maryland to establish a contract in which TrimGen would sell genotyping test kits to Iverson. *Id.* ¶ 7. The contract negotiations occurred over the telephone, not in person, as TrimGen had originally alleged in its Complaint. *See* Resp. in Opp. to Def.'s Mot. to Dismiss, 2 n.1, ECF No. 8; *see also* Wang Aff. ¶ 5, ECF No. 8-1. Iverson representatives, however, traveled to Maryland on two occasions to meet with TrimGen to discuss several business matters, including technical specifications for the testing kits in the subject contract dispute. Resp. in Opp. to Def.'s Mot. to Dismiss, at 2 n.1; Wang Aff. ¶¶ 6, 8.

Under the terms of the contract, TrimGen would manufacture the testing kits in Maryland, and then ship the kits to Iverson's laboratory in South Carolina. *Id.* Iverson would

then pay TrimGen for the delivered product within ninety days from the date of the invoice. *Id.* ¶ 9. From April 2012 through March 2014, Iverson placed orders of $6,755,859.98 in total. Resp. in Opp. to Def.'s Mot. to Dismiss, at 2 (citing Wang Aff. ¶ 9). Of that sum, $1,468,979.98 allegedly remains outstanding. *Id.*; *see also* Compl. ¶ 10; Compl. Ex. A, ECF No. 1-1 (Invoices).

TrimGen filed the subject diversity action seeking the unpaid $1,468,979.98, plus pre-judgment interest. *See* Compl. Defendant moved to dismiss the Complaint pursuant to Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure. *See* Mot. to Dismiss, ECF No. 5. Iverson contends that it is not subject to the personal jurisdiction of this Court, and, in the alternative, that venue is improper. *Id.* After briefing was complete on the matter of Defendant's Motion to Dismiss, Plaintiff filed a Motion for Leave to File a Surreply (ECF No. 12).

## STANDARD OF REVIEW

### I.    Motion to Dismiss Under Rules 12(b)(2) and 12(b)(3)

A motion to dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction challenges a court's authority to exercise its jurisdiction over the moving party. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). The jurisdictional question is "one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Id.* A court may hold an evidentiary hearing or permit discovery as to the jurisdictional issue, but it also may resolve the issue on the basis of the complaint, motion papers, affidavits, and other supporting legal memoranda. *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009); *see also*

*Armstrong v. Nat'l Shipping Co. of Saudi Arabia*, Civ. A. No. ELH-13-03702, 2015 WL 751344,

*3 (D. Md. Feb. 20, 2015). In the latter situation, a plaintiff need only make "a prima facie

showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *Consulting

Eng'rs Corp.*, 561 F.3d at 276. When considering whether the plaintiff has made the requisite

showing, "the court must take all disputed facts and reasonable inferences in favor of the

plaintiff." *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir.

2003).

## II.     Motion to Dismiss Under Rule 12(b)(3)

A motion to dismiss pursuant to Rule 12(b)(3) for improper venue requires a similar

inquiry to that of Rule 12(b)(2). *See Bahn v. Chicago Motor Club Ins. Co.*, 634 A.2d 63, 69 (Md.

Ct. Spec. App. 1993). Once again, the plaintiff bears the burden of establishing that venue is

proper, although the court must draw all reasonable inferences in favor of the plaintiff. *Jones

v. Koons Automotive, Inc.*, 752 F. Supp. 2d 670, 680 (D. Md. 2010) (citing *Three M Enters., Inc. v.

Texas D.A.R. Enters., Inc.*, 368 F. Supp. 2d 450, 454 (D. Md. 2005) (internal citations

omitted)).

## III.    Motion for Leave to File a Surreply

As a general rule, this Court will not allow parties to file surreplies. Local Rule

105.2(a) (D. Md. 2011); *see MTB Servs., Inc. v. Tuckman-Barbee Const. Co.*, No. 1:12-cv-02109-

RDB, 2013 WL 1224484, *6 (D. Md. Mar. 26, 2013). In *MTB Services*, this Court explained

that a "party moving for leave to file a surreply must show a need for a surreply." *Id.*

(internal citation omitted).  A court may permit a plaintiff to file a surreply if "a defendant

raises new legal issues or new theories in its reply brief." *Id.* (citing *TECH USA, Inc. v. Evans,*

592 F. Supp. 2d 852, 862 (D. Md. 2009)). Even further "[s]urreplies may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." *MTB Servs.*, 2013 WL 1224484 at *6; see also *Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003).

ANALYSIS

## I.      Motion for Leave to File a Surreply

Although not chronological, the first issue to be considered is Plaintiff's Motion for Leave to File Sur-Reply.  As this Court has explained, a party moving for leave to file a sur-reply must "show a need for a surreply." *MTB Servs.*, 2013 WL 1224484, at *6 (emphasis added). Such need arises when a defendant presents "new legal issues or new theories in its reply brief." *Id.* (internal citation omitted). In requesting leave to file a surreply, TrimGen contends that Iverson, in its Reply in Support of Defendant's Motion to Dismiss (ECF No. 11), presents factual inaccuracies bearing directly on whether this Court may exercise personal jurisdiction over Iverson. Pl.'s Surreply, 1, ECF No. 12-2. Specifically, Iverson asserted that it was TrimGen, not Iverson, which initiated the contact that led to the business relationship. Sproles Aff. ¶¶ 3-4, ECF No. 11-1. On the basis of this assertion, Iverson argued that its contacts with the forum state are so negligible as to preclude this Court from exercising personal jurisdiction. Reply in Supp. of Def.'s Mot. to Dismiss, at 4-5.

As Iverson presented this allegation for the first time in its Reply, TrimGen had no opportunity to respond. This newly-raised assertion is hardly tangential to the subject of Defendant's Motion to Dismiss, but rather is a key consideration in the personal jurisdiction analysis. Accordingly, TrimGen has demonstrated a need for a surreply. Despite the general

5

rule against surreplies, Local Rule 105.2(a), TrimGen's Motion for Leave to File a Surreply is GRANTED.

## II.     Motion to Dismiss Under Rule 12(b)(2)

In moving to dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure, Iverson contends that TrimGen has failed to carry its burden in presenting facts sufficient to establish this Court's jurisdiction over Iverson, a non-resident. Before a court can exercise personal jurisdiction over a non-resident defendant, a court must determine that (1) the exercise of jurisdiction is authorized under the state's long-arm statute pursuant to Rule 4(k)(1)(a) of the Federal Rules of Civil Procedure; and (2) the exercise of jurisdiction conforms to the Fourteenth Amendment's due process requirements. *Carefirst*, 334 F.3d at 396; *see also Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001); *Armstrong*, 2015 WL 751344, at *4-7. When interpreting the reach of Maryland's long-arm statute, Md. Code Ann., Cts. & Jud. Proc., § 6-103(b), a federal district court must adhere to the interpretations of the Maryland Court of Appeals. *See Snyder v. Hampton Indus., Inc.*, 521 F. Supp. 130 (D. Md. 1981), *aff'd*, 758 F.2d 649 (4th Cir. 1985). Although Maryland courts "have consistently held that the state's long-arm statute is coextensive with the limits of personal jurisdiction set out by the Due Process Clause of the Constitution," *Carefirst*, 334 F.3d at 396, the long-arm statute must still be examined as part of the two-step personal jurisdiction analysis. *Mackey v. Compass Mktg., Inc.*, 892 A.2d 479, 493 n.6 (Md. 2006).

To satisfy the long-arm prong of a personal jurisdiction analysis, a plaintiff must specifically identify a provision in the Maryland statute that authorizes jurisdiction. *Ottenheimer Publishers, Inc. v. Playmore, Inc.*, 158 F. Supp. 2d 649, 652 (D. Md. 2001). While it is

6

preferable that a plaintiff identify the statute authorizing jurisdiction in its complaint, the plaintiff alternatively may reference the applicable statute in its response to a defendant's motion to dismiss. *Johansson Corp. v. Bowness Constr. Co.*, 304 F. Supp. 2d 701, 704 n.1 (D. Md. 2004).

Once a plaintiff identifies the specific Maryland statute conferring jurisdiction over the defendant, a court turns next to the second prong of the personal jurisdiction analysis. Under this prong, this Court must determine whether the exercise of personal jurisdiction would comport with the due process requirements of the Fourteenth Amendment. For a non-resident defendant, "due process requires only that . . . a defendant . . . have certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). A "minimum contacts" determination rests on the number and relationship of a defendant's contacts to the forum state, as well as whether the present cause of action stems from the defendant's alleged acts or omissions in the forum state. *See Int'l Shoe Co.*, 326 U.S. at 316. Thus, a court may exercise general jurisdiction, where the defendant has continuous and systematic contacts in the forum, or specific jurisdiction, where the suit arises from the defendant's contacts. *Carefirst*, 334 F.3d at 397; *see also Armstrong*, 2015 WL 751344, at *7-8. While TrimGen has not alleged any continuous contacts between Iverson and Maryland, there is the allegation of specific contacts between the parties in this state. Accordingly, the inquiry in this matter is with respect to specific, and not general, jurisdiction.

In this case, TrimGen relies on the first provision of the Maryland long-arm statute, which extends personal jurisdiction to any "person, who directly or by an agent . . . [t]ransacts any business or performs any character of work or service in the State."[1] Md. Code Ann., Cts. & Jud. Proc., § 6-103(b)(1). On the basis of TrimGen's submissions to this Court, TrimGen amply satisfies its burden to defeat a Rule 12(b)(2) motion. Iverson, while not a resident of Maryland, initiated contact with TrimGen, a Maryland resident, so as to establish a business relationship.[2] *See* Wang Aff. ¶ 5; *see also* Mem. in Supp. of Pl.'s Mot. for Leave to File a Surreply, at 1-4. Iverson called, emailed, and otherwise contacted TrimGen in Maryland. Compl. ¶ 7. TrimGen manufactured the testing kits ordered by Iverson in Maryland, and then shipped the kits from Maryland to Iverson's laboratory in South Carolina. *Id.* Iverson's agents traveled to Maryland to meet with TrimGen to review, among other matters, the technical specifications for the subject contract. Wang Aff. ¶¶ 6-7; *see also* Resp. in Opp. to Mot. to Dismiss, at 7. Even further, in April 2013, then Chief Executive Officer of Iverson, Dean Sproles, met with TrimGen's President, Xiaobing Wang (James Wang), in Maryland to discuss future business interests and the subject contract. Wang Aff. ¶ 8. Finally, Iverson paid TrimGen either by mailing checks to TrimGen's Maryland address, or wiring money directly to Plaintiff's Maryland bank account. *Id.* ¶ 10.  In sum, Iverson transacted business in the State of Maryland, such that the long-arm statute is satisfied.

---

[1] Although TrimGen did not identify the specific provision in its Complaint, it referenced the applicable statute in its Opposition to Defendant's Motion to Dismiss. *See Johansson Corp.*, 304 F. Supp. 2d at 704 n.1.

[2] In its Reply in Support of Def.'s Mot. to Dismiss, Iverson contested which party initiated the contact. As previously discussed, TrimGen responded to this assertion in its Surreply. At the motion to dismiss stage, however, a court must accept plaintiff's factual allegations as true, *Edwards*, 178 F.3d at 244. The factual dispute between the parties is thus reserved for a later stage.

Turning next to the second prong of the personal jurisdiction analysis, Iverson's contacts with Maryland are such that this Court's exercise of jurisdiction over Iverson comports with the due process requirements of the Fourteenth Amendment. While TrimGen has not alleged any continuous and systematic contact with Iverson, specific jurisdiction is exerted in light of the contacts between the parties. Iverson's contacts to the forum relate solely to its business relationship with TrimGen. This action arises from that business relationship, specifically Iverson's alleged failure to pay $1,468,979.98. As Iverson initiated contact with TrimGen, a Maryland corporation, it "purposefully direct[ed] its activities toward [a] forum resident[]." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985). This Court's exercise of personal jurisdiction over Iverson thus does not "offend traditional notions of fair play and substantial justice," *Int'l Shoe Co.*, 326 U.S. at 316. Since TrimGen satisfies both prongs of the personal jurisdiction inquiry, Defendant's Motion to Dismiss for lack of personal jurisdiction is DENIED.

## III.    Motion to Dismiss Under Rule 12(b)(3)

In addition to contesting this Court's exercise of personal jurisdiction, Iverson also moves to dismiss for improper venue under Rule 12(b)(3) of the Federal Rules of Civil Procedure. Venue for this action is governed by 28 U.S.C. § 1391(b), which provides that a "civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in . . . (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . ." Moreover, a "defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c).

As this Court previously held that personal jurisdiction over Iverson is present, venue is also proper. Iverson, by contacting and meeting with TrimGen agents in Maryland, ordering products produced in Maryland, and paying money to a Maryland bank account, purposefully availed itself of the privilege of doing business in Maryland. *See Bahn*, 634 A.2d at 69. Defendant Iverson's Motion to Dismiss for improper venue is thus DENIED.

CONCLUSION

For the reasons stated above, Defendant Iverson's Motion to Dismiss (ECF No. 5) is DENIED and Plaintiff TrimGen's Motion for Leave to File a Surreply (ECF No. 12) is GRANTED.

A separate Order follows.

Dated:        May 7, 2015                /s/_____
                                         Richard D. Bennett
                                         United States District Judge